

# In the
# Missouri Court of Appeals\
# Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.B., | ) | |
| | ) | |
| Appellant, | ) | WD84244 |
| | ) | |
| v. | ) | OPINION FILED: JUNE 28, 2022 |
| | ) | |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jalilah Otto, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Karen King Mitchell, Judge and Janet Sutton, Judge

A.S.B. appeals from the trial court's judgment concluding that A.S.B. committed acts that would constitute domestic assault in the third degree if committed by an adult. A.S.B. appeals, arguing that the trial court, in conducting A.S.B.'s adjudication hearing via two-way live video and in refusing to allow A.S.B. to be physically present during the adjudication hearing because of the COVID-19 pandemic, violated (1) A.S.B.'s constitutional right to confront witnesses against him in that the trial court held the adjudication hearing entirely on two-way live video over A.S.B.'s objection so that A.S.B.

was not physically present in the same room as the witnesses while they testified against him; and (2) A.S.B.'s right to due process guaranteed in the federal and state constitutions and in Rule 128.01[1] in that the trial court denied A.S.B.'s request to be physically present during the adjudication hearing and instead had A.S.B. participate in the hearing via a two-way live video from the detention center. We vacate the trial court's judgment and remand.

**Factual and Procedural Background**

On July 15, 2020, the Juvenile Officer of Jackson County ("Juvenile Officer") filed a petition alleging that A.S.B. committed acts that would constitute domestic assault in the third degree and stealing if committed by an adult. The case was assigned to and heard by a family court commissioner ("commissioner"). On October 7, 2020, the commissioner gave the parties notice that the adjudication hearing scheduled for October 22, 2020, would take place on Webex, a two-way live video application; notice that witnesses should appear on Webex and were only allowed to appear in person if they did not have access to Webex; and notice that "[c]hildren shall not be physically present in the courtroom at the time of this hearing." The Juvenile Officer and A.S.B. filed a joint request for a continuance on October 14, 2020. The commissioner granted the joint request for a continuance and scheduled the adjudication hearing to take place on Webex on December 9, 2020.

On December 9, 2020, A.S.B. filed a written objection to conducting the adjudication hearing via Webex, including witness testimony, and without A.S.B. physically present in the courtroom, reasoning that doing so would violate his

---

[1]All rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

constitutional rights to due process and confrontation, and lodged an oral objection on the same basis as well. The commissioner gave the Juvenile Officer until December 14, 2020, to file a response to A.S.B.'s objection, and gave A.S.B. until December 15, 2020, to file any necessary reply. The Juvenile Officer's response argued that, while in-person confrontation is preferable, it is not necessary to satisfy the defendant's right to confrontation provided that the denial of in-person confrontation of adverse witnesses is necessary to further important policy, and the reliability of the testimony is otherwise assured. The Juvenile Officer asserted that video appearances were sufficient in the circumstances given that the Supreme Court of Missouri and the Presiding Judge of the Sixteenth Circuit had authorized and encouraged the use of video proceedings due to the COVID-19 pandemic. The commissioner overruled A.S.B.'s objection and informed the parties that the adjudication hearing would take place via Webex on December 17, 2020.

The scheduled adjudication hearing took place as scheduled. At the outset of the adjudication hearing, the commissioner explained his decision as follows:

> [U]nder these circumstances, it's the Court's opinion that due to the orders-- administrative orders and so forth that have been issued by the Supreme Court of the State of Missouri, authorizing hearings to be conducted by Webex, and . . . those orders authorized us to proceed, . . . there are also orders that give discretion to the courts to determine what is appropriate in view of . . . the safety of all the participants in the case.
>
> And I would point out for the record that, to my knowledge, on December 15, 2020, there were 221 deaths in Missouri . . . .
>
> So the Court believes furthermore that . . . the technology that we have today . . . allows us to conduct proceedings of this type in a way that would have been unthinkable just a few years ago because, in fact, you can see the demeanor of witnesses on Webex. . . . You can hear the tenor of their voice.

3

You can sense a great deal about their . . . credibility. . . . [T]here's no doubt in my mind that it's a fundamentally fair process.

. . . . [W]hile I would, under normal circumstances, prefer to conduct a proceeding of this type in a courtroom, under these circumstances, it seems to me to place people at risk and not being appropriate. . . . I didn't mention incidentally . . . the fact that . . . if the young man is able to come out of the detention facility and then go back in, if we did that for all the delinquency cases we have, . . . that detention facility then really would become a possible petri dish of infection, and . . . ]that has not happened because of the policies of this Court.

The adjudication hearing continued with A.S.B. appearing via Webex from the detention center in a room with an individual who was "supervis[ing]" A.S.B. All others participating in the adjudication hearing--including the witnesses--appeared via Webex.

At the conclusion of its evidence, the Juvenile Officer dismissed the stealing allegation and proceeded only on the allegation that A.S.B. committed acts that, if he were an adult, would have constituted domestic assault in the third degree. A.S.B. did not offer any additional evidence. The commissioner verbally indicated that he found that the Juvenile Officer proved beyond a reasonable doubt that A.S.B. committed acts that, if he were an adult, would have amounted to domestic assault in the third degree, and thus the commissioner sustained the amended petition's remaining allegation. The commissioner held a disposition hearing immediately thereafter and took the case under advisement.

The next day, December 18, 2020, the commissioner issued findings and recommendations reflecting the verbal findings and conclusions it made at the close of the evidence, and the trial court adopted those findings and recommendations as a final judgment ("Judgment"). The Judgment made the following findings and conclusions with respect to the decision to conduct the adjudication hearing via Webex:

4

> The objection of the juvenile to proceeding by Webex teleconference was denied. This hearing was held on December 17, 2020. On or about December 15, 2020[,] Missouri experienced more deaths from COVID 19 than had been previously recorded on a single day. The juvenile was housed in the detention facility. Considering the health of all of the witnesses, it would be reckless and truly immoral to expose them to a highly contagious, airborne, and dangerous disease when the juvenile's interest in confrontation could be satisfied through Webex, a method approved by the Supreme Court for conducting hearings during this pandemic. This Division has conducted many hearings by way of Webex, includ[ing] highly contested abuse and neglect cases and finds that, with proper supervision by the court, parties are in fact able to effectively cross-examine witnesses. Their demeanor and tone of voice can also be observed and heard by all parties. Counsel is allowed to confer with their client. The court also notes that in this case, the complaining witness was the stepmother and identification was not a significant issue. Furthermore, the court finds that, in fact, the juvenile was able to effectively confront the witnesses at this hearing and did so through his able counsel.

The Judgment found that "a suitable community-based treatment service does not exist," and committed A.S.B. to the custody of the Division of Youth Services, ordering that A.S.B. should remain in the secure detention facility pending release by the Division of Youth Services.

A.S.B. appeals. While the appeal was pending, we transferred *In re C.A.R.A. v. Jackson County Juvenile Office*, WD83967 (Mo. App. W.D. 2021), and *In re J.A.T. v. Jackson County Juvenile Office*, WD83968 (Mo. App. W.D. 2021), to our Supreme Court pursuant to Rule 83.02. Following briefing by the parties, we entered an order staying the instant proceeding pending the Supreme Court's resolution of *In re C.A.R.A.* and *In re J.A.T.*, given that that the Supreme Court's decisions could have a direct impact on the instant case. Our Supreme Court issued its decisions in those cases on January 11, 2022.

5

Following the Supreme Court's issuance of its mandates in *In re C.A.R.A.* and *In re J.A.T.*, we lifted the stay on January 28, 2022, and A.S.B. filed an amended brief.

**Standard of Review**

We review juvenile proceedings in the same manner as other court-tried cases. *In re C.A.R.A. v. Jackson Cnty. Juv. Off.*, 637 S.W.3d 50, 54 (Mo. banc 2022). We will affirm the trial court's judgment in a juvenile proceeding "unless it is not supported by the evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.* (quoting *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 786 (Mo. banc 2019)).

The constitutional protections afforded to criminal defendants are applicable in juvenile delinquency proceedings, given the possibility of a deprivation of liberty equivalent to incarceration. *Id.* Whether a juvenile's constitutional rights were violated is a question of law that we review *de novo*. *In re J.A.T. v. Jackson Cnty. Juv. Off.*, 637 S.W.3d 1, 6 (Mo. banc 2022). Properly preserved claims of constitutional violations are presumed prejudicial. *Id.* at 7.

**Analysis**

A.S.B. presents two points on appeal. In the first, he argues that the trial court erred in overruling his objection to the adjudication hearing being held via Webex as violative of his right to confrontation guaranteed by the federal and state constitutions in that the trial court prevented A.S.B. from being physically present in the same room during the hearing as the adverse witnesses during their testimony. A.S.B.'s second point on appeal argues that the trial court committed error in overruling his objection to the adjudication hearing being conducted via WebEx as violative of his right to due process guaranteed by

6

the federal and state constitutions and by Rule 128.01 in that the trial court denied A.S.B. the right to be physically present at a critical stage of the proceedings. A.S.B. relies on *In re C.A.R.A.* and *In re J.A.T.* to support his positions on appeal. We begin with A.S.B.'s first point on appeal.

Both the Sixth Amendment to the United States Constitution and article I, section 18(a) of the Missouri Constitution guarantee an individual accused of a crime the right to confront witnesses against him. *See State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006) ("The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." (quoting *State v. Schaal*, 806 S.W.2d 659, 662 (Mo. banc 1991)). The right to confrontation serves two purposes: (1) to seek truth by "promoting reliability, impressing upon witnesses the seriousness of their testimony, allowing the trier of fact to observe the demeanor of witnesses, and subjecting the witnesses to cross-examination"; and (2) to promote the symbolism of "'an open and even contest in a public trial.'" *In re C.A.R.A.*, 637 S.W.3d at 57 (quoting *Lee v. Illinois*, 476 U.S. 530, 540 (1986)).

In *In re C.A.R.A.*, our Supreme Court considered whether the use of two-way live video for witness testimony violated the juvenile's right to confrontation. *Id.* at 54. There, the trial court held the adjudication hearing using a "hybrid" format whereby the juvenile as well as the juvenile's attorney and grandparents were in the courtroom with the judge, but the Juvenile Officer and witnesses appeared via Webex. *Id.* at 52. The trial court reasoned that this hybrid format was appropriate because the Supreme Court's COVID Operational Directives permitted the use of Webex in "all types of hearings at this time in

7

the State of Missouri."  *Id.*   After examining how the United States Supreme Court's approach to the right to confrontation has evolved, our Supreme Court held that Missouri courts should continue to apply the standards set forth in *Maryland v. Craig*, 497 U.S. 836 (1990).  637 S.W.3d at 63.  *Craig* held that the "right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  497 U.S. at 850.  Our Supreme Court thus concluded that, in Missouri courts, "a child victim may testify against the accused by means of video (or similar *Craig* process) when the [trial] court determines, consistent with statutory authorization and through case-specific showing of necessity, that a child victim needs special protection."  637 S.W.3d at 63.

The Supreme Court held that the trial court did not satisfy *Craig*'s necessity prong. *Id.* at 66.  The Court acknowledged that it is "unclear" whether responding to the COVID-19 pandemic would satisfy the "important public policy" standard set forth in *Craig*, but held that "even if we assume the existence of COVID-19 could satisfy the 'important public policy' standard,  the [trial] court would still be required to make witness-specific findings to determine it was necessary for a particular witness to testify via two-way video due to an enhanced risk associated with COVID-19."  *Id.* at 65-66.  Because the trial court made no witness-specific findings as to the necessity of their testimony being conducted via Webex, the Supreme Court vacated the judgment and further found that it did not need to determine "[w]hether the combination of oath, cross-examination, and observation of demeanor, when utilized in a two-way video setting in which the witness is in a remote

8

location with minimal or no safeguards, is ever enough to ensure reliability of any witness." *Id.* at 63, 66. The Court also held that the trial court's reliance on the Supreme Court's COVID Operational Directives to conduct the juvenile's adjudication hearing in a hybrid format with the witnesses appearing via Webex was erroneous, reasoning that the Court's COVID Operational Directives were "carefully drafted to ensure the constitutional and statutory rights of juveniles were protected during the COVID-19 pandemic." *Id.* at 65.

*In re C.A.R.A.* controls our resolution of A.S.B.'s first point on appeal. Here, the trial court, adopting the findings of the commissioner, made no case-specific findings as to whether the unavailability of the witnesses necessitated conducting their testimony via Webex. Instead, the trial court focused on the record number of COVID-19 deaths recorded in Missouri on a single day and the trial court's concern that, if it conducted the adjudicatory hearing in person, "it would be reckless and truly immoral" to expose court staff, the witnesses, the juvenile himself, and possibly other juveniles housed in the detention facility to "a highly contagious, airborne, and dangerous disease" when the Supreme Court has authorized hearings by way of Webex. None of those findings concerned the necessity of having the two witnesses--the victim and a police officer--testify via Webex rather than in person. *In re C.A.R.A.* demands that we hold that these findings were not sufficient to deny A.S.B. the right to confront the witnesses against him in person. As such, the trial court erroneously declared and applied the law in overruling A.S.B.'s objection to having the witnesses testify via Webex as violative of his constitutional right to confrontation.

9

Such an error is presumptively prejudicial, and we may only uphold the judgment if the error was "harmless beyond a reasonable doubt." *State v. March*, 216 S.W.3d 663, 667 (Mo. banc 2007) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). A deprivation of the right to confrontation is "harmless beyond a reasonable doubt" only if "there is no reasonable doubt that the error . . . failed to contribute to the [trial court]'s verdict." *State v. Cooper*, 509 S.W.3d 854, 856 (Mo. App. S.D. 2017) (quoting *March*, 216 S.W.3d at 667). Both of the witnesses who testified at trial testified via Webex. Given that their testimony was the entirety of the evidence presented against A.S.B., we cannot say the trial court's error was harmless beyond a reasonable doubt. *See State v. Smith*, 636 S.W.3d 576, 587 (Mo. banc 2022) (concluding that admitting a witness's testimony that was necessary for establishing the proper foundation to admit DNA evidence was not harmless beyond a reasonable doubt because the DNA evidence was the only physical evidence proving sexual contact between the defendant and victim).

A.S.B.'S first point on appeal is granted. Because we have granted A.S.B.'s first point on appeal, we need not reach the merits of his second.[2]

**Conclusion**

The Judgment is vacated, and the case is remanded.

---

[2]We note, however, that our Supreme Court considered a similar due process challenge in *In re J.A.T. v. Jackson County Juvenile Office*, 637 S.W.3d 1 (Mo. banc 2022). The Supreme Court held that requiring the juvenile to attend his adjudication hearing via two-way video constitutes a due process violation because the juvenile is "denied . . . the crucial right to be physically present at the stage of the proceedings critical to its outcome--the determination of guilt or innocence." *Id.* at 8.

10

_____
Cynthia L. Martin, Judge

All concur