STATE of Missouri, Plaintiff–Respondent,

v.

James A. GOBLE, Defendant–Appellant.

No. 21027.

Missouri Court of Appeals,
Southern District,
Division Two.

June 2, 1997.

---

5. *Sine qua non* is defined as "[a]n indispensable requisite or condition." Black's Law Dictionary 1242 (5th ed. 1979).

Irene Karns, Asst. Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James M. Paul, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Judge.

James A. Goble (defendant) was convicted following a jury trial of involuntary manslaughter, a class C felony. § 565.024.1(2), RSMo 1986. He appeals the judgment of conviction contending the trial court committed plain error in not, *sua sponte*, removing a prospective juror during voir dire. This court affirms.

On the evening of August 6, 1994, Kayla Horn, age 10, was at a softball complex—an area of four softball fields—near Strafford, Missouri. A foul ball was hit across a road adjacent to one of the softball fields. The ball was in the grass on the shoulder of the roadway. Kayla crossed the road to get the ball. She bent over and picked up the ball. As she was straightening up, she was struck by a car and knocked back onto the roadway. The injuries she sustained were fatal.

The car that struck Kayla was operated by defendant. Officer David Cash of the Missouri State Highway Patrol was called to the scene of the accident. When he arrived he saw defendant. He testified, "[Defendant] was being—not actually physically held, but surrounded by two or three individuals down close to his car, another 150 yards back toward the west, off of the roadway." Officer Cash was asked what he observed. He answered:

> Well, he had difficulty standing and maintaining his bearing. He had difficulty verbalizing what he wanted to say. He had an odor of intoxicants about his breath. He was—his clothes were soiled. They smelled of alcohol. He was at times cohesive and decent in his speaking to me, then at times he was cursing and very——would almost kind of lose control of himself.

It was Officer Cash's opinion that defendant was intoxicated.

Defendant presents one point on appeal. He contends the trial court "plainly erred" in not striking prospective juror Lynn J. Luallin during voir dire. Defendant contends the trial court should have, *sua sponte*, excused Mr. Luallin on the basis of answers he gave to certain questions asked during voir dire.

During the state's voir dire, Assistant Prosecuting Attorney Ron Cleek asked the general question, after outlining the facts the state anticipated proving, "Is there anyone here who has ever heard about this, those facts, or ever heard about it on the news, or talked about it with a friend or neighbors?" The inquiry produced the following exchange with Mr. Luallin:

> MR. CLEEK: What about over here on the first row, heard about it, know about it? Yes, sir, state your name, please.
>
> PROSPECTIVE JUROR LUALLIN: Lynn Luallin.
>
> MR. CLEEK: Mr. Luallin, where did you hear about this?
>
> PROSPECTIVE JUROR LUALLIN: I heard about it on the news, and I know the Horns, close friends.

MR. CLEEK: Okay. Would that affect you in this case?

PROSPECTIVE JUROR LUALLIN: I would hope not.

MR. CLEEK: How well do you know the Horns?

PROSPECTIVE JUROR LUALLIN: Just I knew the Horns back when I lived in Groves Springs.

MR. CLEEK: Okay. Have you heard or read enough about this case, or talked with different neighbors or friends at this point that you may have already formed an opinion on the guilt or innocence?

PROSPECTIVE JUROR LUALLIN: I haven't formed an opinion. I've talked about it, but I have no opinion.

MR. CLEEK: Well, let me ask you point blank, can you be fair and impartial in this case to both sides?

PROSPECTIVE JUROR LUALLIN: I don't know.

MR. CLEEK: Well, I don't want to say that's not good enough, but can you be, yes or no, fair and impartial?

PROSPECTIVE JUROR LUALLIN: Yes.

During defendant's voir dire, Mr. Luallin was asked the following questions by defendant's attorney, David Back, and gave the following answers:

MR. BACK: Mr. Luallin, you said you lived out in Groves Springs, is that right?

PROSPECTIVE JUROR LUALLIN: Yes.

MR. BACK: And you know the Horns?

PROSPECTIVE JUROR LUALLIN: Yes.

MR. BACK: Did you talk to the Horns about this incident?

PROSPECTIVE JUROR LUALLIN: Personally, I did not.

MR. BACK: Did anybody—did you get any information from someone in your household that did talk to them about this accident?

PROSPECTIVE JUROR LUALLIN: Just to talk to my inlaws about it. They still live down there.

MR. BACK: When you talked to your in-laws about this, did you learn of anything—

PROSPECTIVE JUROR LUALLIN: I have an open mind.

MR. BACK: Okay. Then you have not made up your mind as to guilt or innocence in this case?

PROSPECTIVE JUROR LUALLIN: I have not.

MR. BACK: You haven't made up your mind one way or the other?

PROSPECTIVE JUROR LUALLIN: No.

MR. BACK: Open mind, I think is what you said. Can you keep an open mind?

PROSPECTIVE JUROR LUALLIN: Yes.

Mr. Luallin was not challenged either for cause or peremptorily. He served on the jury.

■ Defendant's complaint regarding Mr. Luallin serving as a juror is based on the voir dire inquiry. Defendant was, therefore, aware of the "facts" he now claims disqualified Mr. Luallin prior to when Mr. Luallin was administered the oath to serve as a juror.

When the defendant is aware of facts which would sustain a challenge for cause, he must present his challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived. *State v. Boyet,* 620 S.W.2d 439, 440 (Mo.App.1981). This requirement of contemporaneous objections to the venireperson's qualifications "serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Hadley,* 815 S.W.2d 422, 423 (Mo.banc 1991).

*State v. Marlow,* 888 S.W.2d 417, 420 (Mo. App.1994). *See also State v. Salkil,* 837 S.W.2d 367, 369 (Mo.App.1992); *State v. Kelly,* 823 S.W.2d 95, 97 (Mo.App.1991).

■ Defendant's request for plain error review is a tacit acknowledgment that he waived his right to challenge Mr. Luallin. "A challenge made for the first time after

conviction can only be considered for plain error resulting in a miscarriage of justice or manifest injustice." *State v. Woods*, 662 S.W.2d 527, 529 (Mo.App.1983); *see* Rule 30.20.

 Prior knowledge or familiarity with the facts of a case without formation of an opinion as to guilt or innocence does not require disqualification of a juror. *State v. Walton*, 796 S.W.2d 374, 378 (Mo. banc 1990). The fact that a potential juror was acquainted with or friends with a victim does not, in and of itself, mandate disqualification. *State v. Ervin*, 835 S.W.2d 905, 915–16 (Mo. banc 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Richards*, 536 S.W.2d 779, 787 n. 12 (Mo.App. 1976).

The factors that disqualify a prospective juror are whether he or she has formed an opinion of guilt or innocence and whether that person's knowledge, acquaintance or friendship would preclude him or her from reaching a verdict based on the evidence. Initially, Mr. Luallin was equivocal in his answer to whether his acquaintance with the Horns would affect his participation in the case and in his answer to whether he could give both sides a fair trial. He first answered that he hoped this acquaintance would not affect him in the case; that he did not know if he could be fair and impartial to both sides. He then, upon further reflection, stated that he could be fair and impartial; that he had not made up his mind one way or the other. He had not formed an opinion as to guilt or innocence.

 "*Sua sponte* action should be exercised only in exceptional circumstances." *State v. Drewel*, 835 S.W.2d 494, 498 (Mo. App.1992). This was not one of those instances. This court finds no manifest injustice or miscarriage of justice. The judgment is affirmed.

CROW, P.J., and SHRUM, J., concur.