**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Michael JACKSON,**
**Defendant/Appellant.**

**No. ED 93104.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 15, 2010.

Timothy Forneris, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for appellant.

Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Defendant, Michael Jackson, appeals from a judgment entered on a jury verdict finding him guilty of second-degree murder, in violation of section 565.021 RSMo

(2000).[1] The trial court sentenced defendant to twenty-five years imprisonment.

On appeal, defendant contends the trial court erred in overruling his motion to strike a venireperson for cause and overruling his objection to the admission of the victim's autopsy report that did not include the toxicology screening. We affirm.

Defendant does not challenge the sufficiency of the evidence. On June 2, 2007, the police found defendant alone with the victim in a parked truck. The victim was "twitching," and did not have a pulse. A medical examiner performed an autopsy on the victim and concluded that the victim died from manual strangulation.

I. *Motion to Strike for Cause*

In his first point, defendant contends the trial court abused its discretion in overruling his motion to strike venireperson S.R. for cause because venireperson S.R. had prior knowledge of the case in that he worked with the paramedics who responded to the homicide and venireperson S.R. had discussed the incident with them.

The trial court is in the best position to observe and evaluate a venireperson's qualifications to serve as a juror and has broad discretion in making this determination after considering the entire examination of the venireperson. *Joy v. Morrison,* 254 S.W.3d 885, 888 (Mo. banc 2008) (quoting *State v. Christeson,* 50 S.W.3d 251, 264 (Mo. banc 2001)). We will not disturb the trial court's ruling on a motion to strike for cause unless there has been a clear showing of an abuse of discretion. *Joy,* 254 S.W.3d at 888.

Venireperson S.R. was employed as a firefighter and paramedic, and was assigned as a substitute worker for the sta-

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

tion that responded to the scene of the homicide. Venireperson S.R. was not involved in the investigation, but he worked with and briefly discussed the homicide with the other paramedics who had responded.

During voir dire, the state asked venireperson S.R. whether anything discussed with the responding paramedics would affect his ability to sit on the jury and venireperson S.R. responded, "I don't think so." The state asked him whether he would be able to keep an open mind until he heard all the evidence, and venireperson S.R. responded, "Sure." The state then read a list of people who were involved in the case, which included two paramedics. Venireperson S.R. responded that he knew the two paramedics, but could hold their testimony on the same level as the other witnesses.

Defense counsel then moved that venireperson S.R. be stricken for cause for the reason that venireperson S.R. talked to the responding paramedics when they returned from the homicide and that he knew facts and details that could prejudice his ability to listen to the evidence in the case.

Venireperson S.R. was thereupon examined at a sidebar. Defense counsel asked him to explain what he knew about the case. Venireperson S.R. indicated that while he was driving to work, he passed by the vehicle where the victim was found; that for the rest of the day he worked with the paramedics who responded; and that he remembered "some vague details." Defense counsel asked him what details he remembered, and venireperson S.R. answered that he remembered the paramedics telling him that a woman was found and that she had been "dead for awhile." Venireperson S.R. indicated that there was nothing about that information that would affect his ability to listen to the evidence in

the case, that he would judge the paramedics' testimony on the same level as other testimony, and that he could make a decision based solely on what he heard in court. The court denied the motion to strike for cause, and venireperson S.R. served on the jury.

■■■ "[P]rior knowledge about a case does not, per se, require that a potential juror be stricken when such knowledge does not preclude them from reaching a verdict based upon the evidence." *State v. Walton,* 796 S.W.2d 374, 378 (Mo. banc 1990). A potential juror is qualified to serve on the jury if he or she is familiar with some of the facts of a case, but does not have an opinion on the defendant's guilt or innocence. *Id.*; *State v. Goble,* 946 S.W.2d 16, 19 (Mo.App.1997). Further, a venireperson's friendship with a witness for a party, in itself, does not require that the venireperson be stricken for cause. *Walton,* 796 S.W.2d at 378. The factors that would disqualify a prospective juror are whether the prospective juror has formed an opinion of guilt or innocence and whether his or her knowledge, acquaintance, or friendship would preclude him or her from reaching a verdict based only on the evidence. *Goble,* 946 S.W.2d at 19. A prospective juror must "unequivocally indicate [ ] an ability to evaluate the evidence fairly and impartially." *State v. Storey,* 901 S.W.2d 886, 894 (Mo. banc 1995). The trial court is in the best position to determine the venireperson's ability to impartially follow the law. *Walton,* 796 S.W.2d at 378.

The trial court did not abuse its discretion in overruling defendant's motion to strike venireperson S.R. for cause. We view the entire examination of venireperson S.R., including the sidebar discussion. Venireperson S.R. unequivocally indicated that none of his prior knowledge about the case would affect his ability to listen to the

evidence presented, that he could evaluate the evidence fairly and impartially, and that he could make a decision based only on the evidence presented in court. The entire examination of venireperson S.R. removed any doubt about his ability to act as a fair and impartial juror and therefore, venireperson S.R. was qualified to sit on the jury. *See State v. Kirksey,* 725 S.W.2d 611, 617 (Mo.App.1987). Point one is denied.

## II. *Admission of Autopsy Report*

■ In his second point, defendant contends the trial court abused its discretion "in overruling [his] objection to the state's exclusion of the toxicology screening from the autopsy report." He claims that the exclusion of the toxicology screening prevented him from presenting evidence that the victim had overdosed because of her cocaine consumption, and this evidence was relevant in the jury's determination of whether defendant was guilty of murder or manslaughter.

■ A trial court has broad discretion to admit or exclude evidence at trial, and we will only reverse a trial court's ruling on the admission of evidence if the court has clearly abused its discretion. *State v. Kemp,* 212 S.W.3d 135, 145 (Mo. banc 2007). Additionally, we review for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.*

At trial, the medical examiner who performed the autopsy on the victim testified, and the state offered the autopsy report into evidence. Defense counsel objected, stating:

I'm not objecting to the part that she has, but, however, it has been severed from the rest of the report which I believe is just the toxicology screening. So I would ask that the entire report, including the toxicology screening, be admitted into evidence if she is going to admit part of the report.

The state responded that it had filed a motion in limine on the toxicology issue. The trial court acknowledged that it would be permissible to ask the medical examiner what substances the victim had in her system and what effect those would have had on her. The trial court explained that drug levels are not within a juror's common knowledge. The trial court said, "If this witness can testify as to ... what the effects of certain levels are, then you might be able to get [the toxicology report] in through this witness."

The trial court admitted the autopsy report into evidence. The prosecutor indicated to defense counsel, "I've got the other report handy so if you need it to cross or do whatever, I have it." Defense counsel responded, "Okay."

During cross-examination, defense counsel asked the medical examiner whether toxicology screening was done on the victim, and the medical examiner answered, "Yes." The medical examiner subsequently testified to the blood alcohol content of the victim's system, and what it meant. Defense counsel continued:

Q: Were there any other substances found within her body? Not telling me what the levels were, but just other drugs in her body.

A: Yes.

Q: What were those drugs?

A: Cocaine was found in her body.

Q: Now when you performed your autopsy did you take any swabs or scrapings from the neck area?

A: No.

MS. TAAFFE: I have nothing further, Judge.

Defendant did not question the medical examiner about the drug levels or the ef-

fects of drug levels and did not offer the toxicology screening into evidence.

The medical examiner then testified on redirect examination that manual strangulation was the cause of the victim's death, and any drugs or alcohol the victim had in her system did not contribute to her death.

■ The rule of completeness provides that "where either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or inquire into other parts of the whole...." *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006). This rule seeks to ensure that an exhibit is not admitted out of context. *See State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997), *overruled on other grounds by Joy*, 254 S.W.3d at 889. The adverse party is entitled to introduce or to inquire into other parts of the whole exhibit in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced. *Kemper*, 191 S.W.3d at 50.

■ Defendant's claim of error is directed to trial court error in overruling his objection to the admission of the autopsy report without the toxicology screening. However, defendant does not contend in his point on appeal that the trial court precluded *him* from introducing the toxicology screening. Missouri courts indicate that if the rule of completeness applies, it is satisfied by a procedure in which after one party introduces a portion of an exhibit or admission into evidence, the adverse party may then introduce the remaining portion. *See, e.g., State v. Yole*, 136 S.W.3d 175, 179 (Mo.App.2004). *See also* William A. Schroeder, *Missouri Practice, Missouri Evidence*, § 106.1 (3rd Ed.2007). Error arises if the court precludes the adverse party from introducing evidence admissible under the rule of completeness. *State v. Francis*, 60 S.W.3d 662, 674 (Mo.

App.2001). An adverse party cannot complain of the admission of an incomplete exhibit if that party does not offer the other portions into evidence. *Id. See also Krame v. Waller*, 849 S.W.2d 236, 240 (Mo.App.1993). The trial court said that defendant could introduce the toxicology screening through the medical examiner on cross-examination, after establishing the meaning of the drug levels shown, but defendant did not attempt to do so, and he did not thereafter attempt to introduce it in any other manner. Under these circumstances, defendant has not shown any abuse of discretion, much less prejudice. *See Francis*, 60 S.W.3d at 674.

Point two is denied.

*Conclusion*

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J. and NANNETTE A. BAKER, J., concur.