

# Missouri Court of Appeals

## Southern District

### In Division

STATE OF MISSOURI,              )
)
          Respondent,     )
)  No. SD37812
        vs.            )
)  FILED:  January 17, 2024
RANDALL LEE ABNEY,      )
)
          Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF DENT COUNTY

Honorable Michael J. Randazzo, Judge

### **AFFIRMED**

Following a jury trial, Randall Abney ("Defendant") was convicted of neglect of a child and murder in the second degree, *see* §§ 568.060 and 565.021,[1] for failing to provide his ten-year-old daughter ("Child") with adequate nutrition which ultimately led to her death.  In four points, Defendant argues that the trial court erred in admitting hearsay and evidence of other bad acts.  Because Defendant's claims are without merit we affirm.

### **Factual and Procedural Background**

This Court is required to view the evidence in the light most favorable to the jury's verdicts.  ***State v. Vandergrift***, 669 S.W.3d 282, 291 (Mo. banc 2023).

---

[1] All statutory references are to RSMo. 2016 unless otherwise specified.

In October 2020, police responded to a call requesting service for an unresponsive female at Defendant's home. When police arrived, they saw Child lying on the floor with Defendant kneeling down next to her. Police initially thought Child had a terminal illness due to how thin she appeared. Child was transferred to the hospital and later pronounced deceased. The responding officer had the house secured because his observations led him to believe Child's condition indicated abuse or neglect.

Detective Matt Atkinson ("Detective") was the primary investigator. Detective testified Defendant indicated during his interview that it was Child's choice not to eat. Detective testified that his investigation revealed no evidence that Child suffered from an eating disorder.

Savannah Pogue was the circuit manager for the Division of Children's Services ("Circuit Manager"). Circuit Manager testified she supervised "the licensing unit for the entire circuit" and was responsible for the oversight of foster parents in the district. Circuit Manager supervised the unit that issued Defendant's foster care license and also supervised him in that capacity. Circuit Manager testified that Child was first fostered by Defendant in 2012 and was later adopted. When Child was adopted by Defendant, Children's Division's supervision of the child stopped. After Child's adoption, Defendant continued to foster numerous other children until his license was surrendered in 2017. Circuit Manager testified that the foster care license of Defendant was surrendered in connection with Defendant's administration of food deprivation punishments. Defendant objected to this testimony on the basis that it was impermissible hearsay, evidence of prior bad acts, and was testimonial hearsay in violation of the confrontation clause. The trial court found that the testimony was not hearsay and allowed it to be entered to show lack of mistake, motive, and pattern of conduct.

The State presented multiple witnesses to establish Child's cause of death. The coroner

2

testified that Child had wasting syndrome, which was commonly only seen in hospice patients. The coroner also testified that it would take months of inadequate nutrition for a child to experience such a condition. The doctor who pronounced Child deceased at the hospital also testified that it would take a long time for someone to deteriorate to Child's condition at the time of her death. Another expert witness testified that the autopsy supported the findings of dehydration and malnourishment, leading him to believe she was not receiving adequate nutrition to survive.

The State also presented evidence from Defendant's wife which showed Defendant regularly used food deprivation to punish Child. Defendant's wife testified to the validity of numerous conversations via Facebook and text messages (collectively referred herein to as "messages") between her and Defendant detailing how extreme the food deprivation punishments were in the months leading up to Child's death.

Neither the State nor the Defense referenced the testimony which provides the basis for Defendant's claims of error in their closing argument. The jury found Defendant guilty, and the trial court sentenced him to two life sentences.

## Discussion

## Points I and II

Since both the first and second points on appeal address the rule against hearsay statements, we will address them together. Defendant contends that the trial court abused its discretion by admitting inadmissible hearsay from Detective and Circuit Manager.

A trial court has broad discretion to admit or exclude evidence at trial. ***State v. Forrest***, 183 S.W.3d 218, 223 (Mo. banc 2006). Reversal of a trial court's ruling on the admission of evidence is only compelled if the court has clearly abused its discretion. ***Id.*** Discretion is

3

abused when a ruling is clearly against the logic of the circumstance and is so unreasonable as to indicate a lack of careful consideration. *Id.* This Court reviews the trial court for prejudice on direct appeal and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

"A hearsay statement is any out-of-court statement offered to prove the truth of the matter asserted, and is generally not admissible." *State v. Graham*, 529 S.W.3d 363, 367 (Mo. App. 2017). "The essential principle of the hearsay rule is to secure trustworthiness of testimonial assertions by affording the opportunity to test the credit of the witness, and it is for this reason that such assertions are to be made in court subject to cross-examination." *State v. Kirkland*, 471 S.W.2d 191, 193 (Mo. 1971).

Defendant claims in his first point that Detective's testimony included inadmissible hearsay statements. The following was allowed into evidence over defense counsel's objection:

**Q: Did you investigate whether [Child] had any prior eating disorders?**

A: Yes.

**Q: Were you able to find anything that led you to believe she did have an eating disorder?**

A: I did not find evidence that she had an eating disorder.

**Q: Understood. When we talk about eating disorders and I notice there's some hesitation in your response, are you including food seeking behaviors as part of the reason you're having trouble with that question?**

[Continuing Objection Omitted]

A: I am including food seeking and food aversion.

4

**Q: Okay**

A: Into the same category.

**Q: And I want you to remove food seeking behaviors out of that term I didn't define for you, were you able to find anything that indicated that [Child] was refusing food based upon some eating disorder?**

A: No.

Defendant's first point fails for multiple reasons, but first and foremost because the testimony is not hearsay. Detective did not elicit any out-of-court statement, but rather testified to the factual assertion that his investigation did not reveal any indication of an eating disorder. Hearsay evidence is objectionable because the person who makes the offered statement is not under oath and is not subject to cross-examination. *See **State v. Gott***, 523 S.W.3d 572, 577 (Mo.App. 2017). Here Detective is the declarant. He is in open court, under oath, and subject to cross examination. As the trial court noted, Defendant had the opportunity to examine Detective about the contents and deficiencies of any specific record. Any sources of error or untrustworthiness that existed in the testimony could have been uncovered through cross-examination if defense counsel chose to expose them. As such, Defendant's first point is denied.

Defendant's second point similarly asserts that the trial court erred by admitting testimony from Circuit Manager about the surrender of Defendant's foster care license. During direct examination, the Circuit Manager testified that Defendant's license was relinquished due to his use of food deprivation punishments. Defense counsel objected to hearsay which was overruled by the trial court. Circuit Manager then stated the following during cross-examination:

**Q: You testified as to the reason for [Defendant and his wife] eventually relinquishing their fostering license, correct?**

5

A: Yes.

**Q: And you gathered that from files that other people had compiled, correct?**

A: I was present at their meeting where they relinquished their license, I was the licensing supervisor and present at the meeting.

**Q: Right present at the meeting?**

A: Yes.

**Q: Where they actually relinquished it correct?**

A: Yes.

"A hearsay statement is any out-of-court statement offered to prove the truth of the matter asserted and is generally not admissible." *Graham*, 529 S.W.3d 363 at. 367. Defendant's hearsay argument again fails because Circuit Manager's testimony did not contain any out-of-court statements. The witness testified to her own personal knowledge of the surrender without ever eliciting a statement made by another. For the foregoing reasons, Point II is denied.

## Point III

Defendant's third point claims that Circuit Manager's statements quoted above constituted testimonial hearsay within testimonial hearsay which violated Defendant's constitutional right to confront the witnesses against him.

Generally, appellate review of a trial court's admission or exclusion of evidence is for abuse of discretion. *State v. March*, 216 S.W.3d 663, 664 (Mo. banc 2007). However, "whether a criminal defendant's rights were violated under the Confrontation Clause by the admission of [particular evidence] is a question of law that this Court reviews *de novo*." *Id.* at 664-65.

The Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, guarantees a criminal defendant the right to be confronted with the

6

witnesses against him.  U.S. CONST. amend. VI; **State v. Schaal**, 806 S.W.2d 659, 662 (Mo. banc 1991).  Article I, Section 18(a) of the Missouri Constitution protects the same rights as those found in the Sixth Amendment.  **Id.**  The United States Supreme Court has held that the Sixth Amendment bars the admission of the testimonial statements of a witness who did not appear at trial unless the declarant was unavailable to testify, and the defendant had a prior opportunity for cross-examination.  **Crawford v. Washington**, 541 U.S. 36, 53-54 (2004).  "When the primary purpose of a statement is to establish or prove past events that could be potentially relevant to later criminal prosecution, it may be considered testimonial."  **State v. Tisius**, 362 S.W.3d 398, 406 (Mo. banc 2012) (citing **Davis v. Washington**, 547 U.S. 813, 822 (2006)).

Our analysis must begin by isolating the testimonial statement.  Defendant alleges generally "these reports and statements should be seen as testimonial," but provides no specific assertions.  Defendant appears to argue Circuit Manager was testifying from the reports she may have received; however, when questioned regarding this issue Circuit Manager testified:

**Q: And you gathered that from files that other people had compiled, correct?**

A: I was present at their meeting where they relinquished their license, I was the licensing supervisor and present at the meeting.

There is no violation of the confrontation clause because, as discussed above, there was no out of court statement, let alone a testimonial statement.  Circuit Manager, who was present at trial and subject to cross examination, testified to a factual assertion based on her own personal knowledge.  Because no statement was offered by a witness who did not appear, Defendant cannot argue the witness was not confronted.

Point III is denied.

**Point IV**

Defendant's fourth and final point claims the trial court erred when admitting evidence of Defendant's previous use of food deprivation punishment. Defendant contends this evidence constituted prior bad act evidence of uncharged acts of abuse against other children. He further argues this evidence was more prejudicial than probative, constituted propensity evidence, and fell under no exception to the ban on admitting prior bad acts.

A trial court has broad discretion to admit or exclude evidence at trial. *Forrest*, 183 S.W.3d at 223. On direct appeal this Court will review the trial court's ruling and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* A trial court's error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial. *State v. Pickens*, 332 S.W.3d 303, 318 (Mo. App. 2011).

At trial, Defendant sought to exclude testimonial evidence that Defendant's foster care license was revoked due to his use of food deprivation as a form of punishment. The State argued the testimony was "not being produced for prior bad acts purposes[.] [I]t's being produced to show absence and mistake and to show motive[.]" The trial court allowed the testimony explaining, "I will allow you to offer [the testimony] into evidence regarding the lack of mistake, motive and pattern of conduct[.]"

Here, Defendant's argument fails because there is no indication that the testimony about his previous use of food deprivation punishments prejudiced his right to a fair trial. The State asked only four questions about the previous use of food deprivation or surrender of the foster care license over the course of a three-day trial. Neither party referenced the surrender of the license or the previous use of food deprivation in closing argument. Furthermore, the State presented extensive and overwhelming evidence that could lead a reasonable jury to conclude

8

Defendant was guilty of these crimes.[2]  Defendant cannot demonstrate that there is a reasonable probability the admission of this testimony affected the outcome of his trial.  For all the above reasons, Point IV is denied.

Accordingly, the judgment is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

DON E. BURRELL, J. –  CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

---

[2]Because sufficiency of the evidence is not disputed in this matter, this Court has not detailed the extensive nature of the evidence against Defendant.  The record contained ample overwhelming evidence of guilt particularly in the form of the detailed messages between Defendant and his wife describing the abuse of Child in the months leading up to her death.